**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BROOKSTONE HOLDINGS CORP., et al.,[1] | Case No. 18-11780 (BLS) |
| Debtors. | (Jointly Administered) |
| BKST BRAND HOLDINGS LLC, | |
| Plaintiff, | |
| v. | Adv. Pro. No. |
| AQ TEXTILES, LLC, | |
| Defendant. | |

**VERIFIED COMPLAINT**

BKST Brand Holdings LLC ("BKST"), by and through the undersigned counsel, for its Adversary Complaint against Defendant AQ Textiles, LLC ("AQ Textiles"), states as follows:

**INTRODUCTION**

1. On November 29, in response to a motion by the above-captioned debtors (the "Debtors") in the above-captioned jointly administered chapter 11 bankruptcy proceeding (the "Bankruptcy Case"), AQ Textiles asserted for the first time in the Bankruptcy Case or otherwise that it is entitled to, and purported to make, an election under section 365(n) of the Bankruptcy Code. AQ Textiles purported to make such a section 365(n) election in a flawed attempt to

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: Brookstone Holdings Corp. (4638), Brookstone, Inc. (2895), Brookstone Company, Inc. (3478), Brookstone Retail Puerto Rico, Inc. (5552), Brookstone International Holdings, Inc. (8382), Brookstone Purchasing, Inc. (2514), Brookstone Stores, Inc. (2513), Big Blue Audio LLC (N/A/), Brookstone Holdings, Inc. (2515), and Brookstone Properties, Inc. (2517). The Debtors' corporate headquarters and the mailing address for each Debtor is One Innovation Way, Merrimack, NH 03054.

retain certain alleged rights to use certain trademarks BKST purchased from the Debtors in a court-approved sale that closed on October 19 (the "Purchased Marks"). In its objection, AQ Textiles requested an express determination that it has retained its rights under a license agreement that the Debtors have sought to reject.

2. In response, the Debtors and BKST attempted to resolve the numerous differences between the parties. Such discussions have thus far been unsuccessful.

3. Although the majority of disputes presented in the Complaint commencing this Adversary Proceeding could all be heard in the context of a contested matter arising out of the Debtors' rejection motion and AQ Textiles' objection thereto, out of an abundance of procedural caution, BKST has filed this action and sought the entry of preliminary injunctive relief. Regardless, this adversary complaint does not substantively change or add to any of the disputed issues between the parties, and the procedural manner in which BKST has chosen to proceed was discussed with AQ Textiles' counsel on December 14, 2018.

4. Furthermore, contemporaneously herewith, BKST has filed an opposition to AQ Textiles' objection in the core bankruptcy proceeding that incorporates by reference the arguments presented herein. These matters are set for an evidentiary hearing on January 16, 2019.

5. AQ Textiles has no rights to continue using the Purchased Marks pursuant to section 365(n) of the Bankruptcy Code because section 365(n) does not apply to trademarks, and no precedential decision binds this Court to endow AQ Textiles with such statutory rights.

6. AQ Textiles has no rights to continue using the Purchased Marks because it has repeatedly breached the License Agreement throughout 2018, including by selling products for

which it did not obtain all required approvals and, until recently, failing to make royalty payments.

7. AQ Textiles' continued, unauthorized use of the Purchased Marks constitutes infringement and unfair competition under applicable non-bankruptcy federal law for which there is no adequate remedy at law for BKST.

8. Concurrently with this Complaint, BKST has filed a motion seeking a preliminary injunction order that, among other things, enjoins and restrains AQ Textiles from manufacturing or selling items bearing the Purchased Marks in any way.

**THE PARTIES**

9. Plaintiff BKST Brand Holdings LLC is a New York limited liability company with its primary place of business at 240 Madison Avenue, 15th Floor, New York, NY 10016.

10. Defendant AQ Textiles, LLC is a North Carolina limited liability company with its primary place of business at 7622 Royster Road, Greensboro, North Carolina 27455.

**JURISDICTION AND VENUE**

11. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.

12. This proceeding is a "core proceeding" pursuant to 28 U.S.C. 157(b)(2)(A), (E), (N), and (O).

13. BKST consents to this Court's entry of final orders with regard to any claim in this adversary proceeding.

14. Venue is proper in this District pursuant to §§ 1408 and 1409.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Bankruptcy Case and Sale Process

15. On August 2, 2018 (the "Petition Date"), Brookstone Company, Inc. ("Brookstone" or the "Licensor") and several of its affiliates commenced the above-captioned main bankruptcy proceeding (the "Bankruptcy Case") by filing voluntary petitions under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court").

16. Brookstone, as licensor, and AQ Textiles, as licensee, are parties to a License Agreement dated June 14, 2012, pursuant to which Brookstone granted AQ Textiles certain rights to use the Purchased Marks in connection with the sale of Licensed Products[2] to certain customers in an approved Territory – the United States and Canada. Upon information and belief, and as AQ Textiles avers, AQ Textiles has continued to manufacture and sell Licensed Products since the Petition Date, including following AQ Textiles' receipt of notice that the Debtors are rejecting the License Agreement, as described below. A true and correct copy of the License Agreement and the amendments thereto are attached hereto as Exhibit 1.

17. On August 8, 2018, the Debtors filed a motion [Docket No. 100] (the "Sale Motion") seeking an order authorizing the sale of substantially all the Debtors' assets and related relief.

18. On August 29, 2018, the Court entered an order [Docket No. 265] (the "Bidding Procedures Order") that established bidding procedures for the sale of substantially all of the

[2] The License Agreement defines the Licensed Products to include bed sheets, pillowcases, and other bedding products.

Debtors' assets. The Bidding Procedures Order sets forth procedures to govern the assumption and assignment of executory contracts (the "Assignment Procedures"). Bid Proc. Order ¶ 6.

19. On August 31, 2018, the Debtors served AQ Textiles and others a Notice of Sale, Bid Procedures, Auction and Sale Hearing [Docket No. 281], *see* Docket No. 301, which informed of the Sale Motion, bidding procedures, deadline to object to the Sale (as defined below) or entry of the Sale Order, and the hearing date for the Court to consider approval of the Sale. The same notice provided appropriate web addresses and the address of the Clerk of the Bankruptcy Court, where copies of Sale-related filings could be viewed or obtained.

20. On September 10, 2018, consistent with the Assignment Procedures, the Debtors served AQ Textiles and others with a Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Sale [Docket No. 345] (the "Notice of Possible Assumption"), which again provided information regarding the Debtors' sale process. *See* Docket No. 359. The Notice of Possible Assumption notified that the Debtors would potentially seek to assume and assign contracts identified on Exhibit 1 thereto to a purchaser of the Debtors' assets and warned in capitalized, bold typeface that the inclusion of a contract on Exhibit 1 thereto did not constitute an admission or guarantee that such contract would be assumed and assigned.

21. At an auction held in accordance with the bidding procedures from September 26, 2018 through September 30, 2018, the Debtors deemed a joint bid between BKST Brand Holdings, LLC and Apex Digital Inc. (together, the "Purchasers") the successful bid for certain of the Debtors' intellectual property and other assets (the "Assets").

22. On October 5, 2018, the Court entered an order [Docket No. 507] (the "Sale Order") approving the sale of the Assets to the Purchasers (the "Sale").

23. The Sale closed on October 19, 2018. Pursuant to an Asset Purchase Agreement [Docket No. 507, Ex. 1] (the "APA") approved by the Sale Order, BKST acquired certain Purchased Assets (as defined in the APA), including the Debtors' right, title, and interest in certain intellectual property, including trademarks. The APA's definition of "Purchased Assets" provides in relevant part:

> all (i) trademarks and service marks owned by Sellers and all registrations, renewals and applications therefor and (ii) all brand names, product names, trade dress, logos, protectable distinguishing guises and indicia, slogans and other similar designations of source or origin formative of 'Brookstone®' or 'BROOKS TONE' owned by Sellers and, in each case, all worldwide rights, title and interest associated with the foregoing, whether registered or not, in any form including abbreviation, derivation, variation, diffusion and/or otherwise, whether stylized or not stylized, and for all purposes and for all goods, products and services (collectively, the 'Trademarks'), including the Trademarks set forth on Schedule 2.01(a).

APA § 2.01(a). BKST also owns the goodwill associated with the Purchased Assets. *Id.* § 2.01(n).

24. The Sale was free and clear of claims and encumbrances other than certain Permitted Encumbrances, which the APA defines to include encumbrances "expressly determined by the Bankruptcy Court to arise under section 365(n) of the Bankruptcy Code." Sale Order §§ V & 8; Sale Order Ex. 1 (APA) p. 7. Use of the Purchased Marks free and clear of claims and interests was material to BKST's decision to enter into the APA and acquire the Purchased Assets. *See* Sale Order § Y (finding that BKST would not have consummated the Sale if transfer of the Purchased Assets was not free and clear of all claims, liens, liabilities,

interests, rights and encumbrances). Claims against Purchased Assets existing at the time of the Sale attached to the sale proceeds received by the Debtors. *Id.* §§ V & 8. Therefore, any claim that was not a Permitted Encumbrance remains a claim against the Debtors only, and the holder of such claim has no remedy against BKST.

**B. Attempted Rejection of the License Agreement and AQ Textiles' Objection**

25. After the Sale closed, the Debtors identified executory contracts that, in their business judgment, (i) were not necessary to wind down their operations or liquidate their estates, (ii) would not benefit from further marketing, and (iii) should be rejected as soon as possible to benefit the estate (the "Rejected Contracts"). On November 13, 2018, the Debtors sought an order rejecting multiple Rejected Contracts, including the License Agreement, in a motion [Docket No. 758] (the "Rejection Motion") made pursuant to section 365(a) of the Bankruptcy Code.

26. On November 16, 2018, the Debtors sent counterparties to Rejected Contracts, including AQ Textiles, an email advising that their contracts were deemed rejected and to stop supplying goods and services under those contracts.

27. On November 29, 2018, AQ Textiles filed an objection [Docket No. 832] (the "Objection") to the Rejection Motion. In its Objection, AQ Textiles purports to elect to retain its rights under the License Agreement pursuant to section 365(n)(1)(B) of the Bankruptcy Code. AQ Textiles requested that the Court "expressly determine that AQ Textiles has retained its rights under [the License Agreement] pursuant to Section 365(n)(1)(B)." Objection p. 9. AQ Textiles does not necessarily object to rejection of the License Agreement, but rather the effect and effective date of the rejection.

28. In an effort to consensually resolve the Objection, the Debtors agreed to temporarily remove AQ Textiles from the schedule of rejected contracts attached to the proposed order granting the Rejection Motion, and to continue a hearing on the Rejection Motion solely with respect to AQ Textiles to January 16, 2019.

29. On December 3, 2018, the Court entered an Order granting the Rejection Motion that is inapplicable to AQ Textiles and the License Agreement.

30. AQ Textiles, Brookstone, and the Debtors have not been able to reach a resolution with respect to this matter.

**C. AQ Textiles' Breaches of the License Agreement**

31. As noted above, pursuant to the License Agreement dated June 14, 2012, Brookstone granted AQ Textiles certain rights to use the Purchased Marks in connection with the sale of Licensed Products to certain customers in an approved Territory.

32. As a result of multiple, continuous breaches of the License Agreement beginning well before the Petition Date and continuing thereafter, AQ Textiles has limited or no remaining rights under the License Agreement.

33. One such breach of the License Agreement includes the failure to remit royalty payments to the Debtor for both pre and post-petition periods.[3] In response to this material and other material breaches, on November 30, 2018, the Licensor exercised its express rights pursuant to Section 15(a) of the License Agreement to amend the License Agreement in the

[3] AQ Textiles failed to timely pay quarterly Minimum Guaranteed Royalties (as defined in the License Agreement) due for the first three calendar quarters of 2018 (i.e. for the periods between January 1, 2018 through September 30, 2018), in the amount of $60,000, and AQ Textiles only finally cured these payment defaults in December 2018 after notice of the rejection from Debtors and after Debtor's delivery of the Nov. 30 Letter.

following respects (the "Amendment"), as it is entitled to do unilaterally under the License Agreement:[4]

- the definition of Licensed Products was amended to delete "Bed Sheets," "Pillowcases" and "Bed Blankets";
- the definition of Territory was revised to delete the United States, its territories and possessions; and
- the License was revised to be a non-exclusive License for the remaining Licensed Products in the revised Territory.

*See* Letter from Licensor to AQ Textiles (Nov. 30, 2018), p. 1 (hereinafter "Nov. 30 Letter"), attached hereto as Exhibit 2.

34. In the same correspondence, the Licensor informed AQ Textiles that it would not permit any further sales of Licensed Products beyond the scope of the Amendment to the License Agreement. *Id.*

35. In addition to the failure to remit its required royalty payments to Licensor as required under the License Agreement, AQ Textiles' breaches of the License Agreement include, but are not limited to, the following:

---

[4] Section 15(a) of the License Agreement provides:

> In addition to any other rights or remedies that LICENSOR may have (including without limitation, any right to immediately terminate this Agreement) upon LICENSEE's breach of this Agreement, LICENSOR may immediately take any or all of the following actions, all at its sole election:
>
> i. Revise the products (including removing one or more products) which constitute Licensed Products hereunder;
> ii. Revise the Territory (including deleting one or more countries) which comprises the Territory hereunder; and
> iii. Revise the right to use the Licensed Marks and the IP Rights form exclusive to a non-exclusive basis if applicable.

Exh. 1 (License Agreement), § 15(a).

- Failure to obtain written approvals of suppliers of Licensed Products;
- Failure to provide Licensor notice of suppliers that produce Licensed Products;
- Failure to provide Licensor quarterly reports listing all suppliers using designated forms;
- Failure to have suppliers execute a designated manufacturer's agreement to certify their compliance with certain regulatory and social compliance terms of engagement, and to deliver copies of the same to Licensor ;
- Failure to secure approvals from Licensor for AQ Textiles' current line of Licensed Products;
- Failure to submit a two-year business plan to Licensor using a designated form by July 1, 2018;
- Failure to provide Licensor monthly written reports outlining sales, royalties and payments for any month in 2018;
- Failure to provide Licensor a re-forecast of net sales for the fourth quarter of 2018; and
- Failure to provide Licensor by March 2, 2018 with a statement signed and confirmed accurate by AQ Textiles' certified public accountants regarding certain royalty information for the year 2017.

*See* Letter from Licensor to AQ Textiles (Dec. 12, 2018), pp. 1-3 (hereinafter "Dec. 12 Letter"), attached hereto as Exhibit 3.

36. Licensor has demanded by notice sent on December 12, 2018 that AQ Textiles cure the foregoing breaches on or before December 22, 2018. *Id.* p. 3. The License Agreement prohibits AQ Textiles from shipping Licensed Products until the defaults are cured. License Agreement § 15(b).

**THE ACTUAL CONTROVERSIES BETWEEN THE PARTIES**

37. The parties dispute whether AQ Textiles has any remaining rights to use the Purchased Marks following rejection of the License Agreement pursuant to section 365(n) of the Bankruptcy Code or otherwise.

38. The parties dispute whether AQ Textiles' purported interest in the Purchased Marks constitutes a Permitted Encumbrance, as that term is defined in the Sale Order and APA.

39. It follows from the foregoing disputes that the parties dispute whether AQ Textiles' ongoing use of the Purchased Marks outside the scope of the Amendment constitutes infringement and unfair competition under 15 U.S.C. §§ 1051, *et seq.* (the "Lanham Act").

40. To date, AQ Textiles has not disputed the numerous breaches of the License Agreement described herein, of which the Licensor provided notice on December 12, 2018.

**COUNT I**

(Declaratory Judgment that AQ Textiles Has No Rights Pursuant to Section 365(n) of the Bankruptcy Code or Otherwise Following Rejection of the License Agreement)

41. BKST repeats and realleges all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

42. AQ Textiles asserts that it is entitled to and purported to make, an election under section 365(n) of the Bankruptcy Code.

43. Under a plain reading of sections 365(n) and 101(35A) of the Bankruptcy Code, trademark licensees are not afforded the special protections Congress bestowed upon other types of intellectual property licensees. 11 U.S.C. §§ 365(n) & 105(35A); *see Mission Prod. Holdings, Inc. v. Tempnology, LLC (In re Tempnology, LLC)*, 879 F.3d 389, 401 (1st Cir. 2018); *In re Exide Techs.*, 607 F.3d 957, 966-67 (3d Cir. 2010).

44. No precedential authority binds this Court to find as a matter of equity that AQ Textiles is entitled the protections of 365(n) or is otherwise entitled to retain its rights following the Debtors' rejection of the License Agreement. Additionally, it would be inequitable and irreconcilable with bankruptcy and trademark law for the Court to grant AQ Textiles the

protections of 365(n) or otherwise provide for AQ Textiles to retain its rights following the Debtors' rejection of the License Agreement. *See In re Tempnology*, 879 F.3d at 402-04.

45. There is an actual controversy between BKST and AQ Textiles as to whether AQ Textiles has any remaining rights to use the Purchased Marks following the Debtors' rejection of the License Agreement.

46. Such controversy is of such immediacy and reality that BKST is entitled to the entry of a declaratory judgment under 28 U.S.C. § 2201, *et seq.* providing that AQ Textiles has no remaining rights pursuant to section 365(n) of the Bankruptcy Code or otherwise to use the Purchased Marks following the Debtors' rejection of the License Agreement.

**<u>COUNT II</u>**
(Declaratory Judgment that AQ Textiles' Asserted Interest is Not a Permitted Encumbrance Under the Sale Order)

47. BKST repeats and realleges all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

48. As stated throughout and set forth in Count I, the parties dispute whether AQ Textiles has any remaining rights to use the Purchased Marks following the Debtors' rejection of the License Agreement.

49. The Sale was free and clear of claims, including rights under section 365(n), other than certain Permitted Encumbrances, which the APA defines to include encumbrances "expressly determined by the Bankruptcy Court to arise under section 365(n) of the Bankruptcy Code." Sale Order §§ V & 8; Sale Order Ex. 1 (APA) p. 7.

50. AQ Textiles may assert that its purported interest in the Purchased Marks is a Permitted Encumbrance, as that term is defined in the Sale Order and APA, as grounds for the

Court to authorize its continued use of the Purchased Marks following rejection of the License Agreement.

51. AQ Textiles never obtained an express determination from this Court that its asserted interest under the License Agreement is a Permitted Encumbrance, as that term is defined in the Sale Order. Indeed, as discussed above, AQ Textiles cannot obtain such determination because section 365(n) does not protect trademark rights. As set forth above, AQ Textiles may rely on the Court's equitable jurisdiction to seek an order bestowing the protections of section 365(n) or similar protections upon it, but it would be inequitable for the Court to grant such relief. AQ Textiles' attempt to claim Permitted Encumbrance status now should be rejected, because the Sale has long been approved and closed.

52. The foregoing controversy is of such immediacy and reality that BKST is entitled to the entry of a declaratory judgment under 28 U.S.C. § 2201, *et seq.* providing that AQ Textiles' purported interest in the Purchased Marks is not a Permitted Encumbrance, as that term is defined in the Sale Order and APA.

**COUNT III**

(Declaratory Judgment that AQ Textiles' Rights Under the License Agreement Have Been Narrowed or Eliminated Due to AQ Textiles' Breaches)

53. BKST repeats and realleges all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

54. Prior to the Petition date and continuing thereafter, AQ Textiles committed multiple, continuous material breaches of the License Agreement, including the failure to remit royalty payments to the Debtor for both pre and post-petition periods.

55. In response to AQ Textiles' breaches of the License Agreement, on November 30, 2018, Licensor unilaterally enacted the Amendment, as permitted under Section 15(a) of the License Agreement, which changed that Agreement as follows:

- the definition of Licensed Products was amended to delete "Bed Sheets," "Pillowcases" and "Bed Blankets";
- the definition of Territory was revised to delete the United States, its territories and possessions; and
- the License was revised to be a non-exclusive License for the remaining Licensed Products in the revised Territory.

*See* Exh. 2 (Nov. 30 Letter) at p. 1.

56. As a result of this Amendment, separate and apart from Licensor's ability to terminate the License Agreement as a result of ***other*** uncured breaches that were the subject of the December 12 Letter, AQ Textiles has no right to use the Licensed Marks on an exclusive basis, outside of Canada, or with "Bed Sheets," "Pillowcases" and "Bed Blankets" at all.

57. In addition to the failure to remit its required royalty payments to Licensor as required under the License Agreement, AQ Textiles' breaches of the License Agreement include, but are not limited to, the following:

- Failure to obtain written approvals of suppliers of Licensed Products;
- Failure to provide Licensor notice of suppliers that produce Licensed Products;
- Failure to provide Licensor quarterly reports listing all suppliers using designated forms;
- Failure to have suppliers execute a designated manufacturer's agreement to certify their compliance with certain regulatory and social compliance terms of engagement, and to deliver copies of the same to Licensor;
- Failure to secure approvals from Licensor for AQ Textiles' current line of Licensed Products;

- Failure to submit a two-year business plan to Licensor using a designated form by July 1, 2018;
- Failure to provide Licensor monthly written reports outlining sales, royalties and payments for any month in 2018;
- Failure to provide Licensor a re-forecast of net sales for the fourth quarter of 2018; and
- Failure to provide Licensor by March 2, 2018 with a statement signed and confirmed accurate by AQ Textiles' certified public accountants regarding certain royalty information for the year 2017.

*See* Exh. 3 (Dec. 12 Letter), pp. 1-3.

58. Brookstone has demanded that AQ Textiles cure the foregoing breaches on or before December 22, 2018. *Id.* p. 3. The License Agreement prohibits AQ Textiles from shipping Licensed Products until these breaches are cured.

59. In light of the actual controversy between the parties regarding whether AQ Textiles has any remaining rights to use the Purchased Marks under the License Agreement, which is of sufficient immediacy and reality to entitle BKST to a declaratory judgment under 28 U.S.C. § 2201, *et seq.*, the Court should enter a declaratory judgment that AQ Textiles has limited or no remaining rights under the License Agreement due to its breaches thereof.

**COUNT V**
(Federal Trademark Infringement)

60. BKST repeats and realleges all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

61. Pursuant to the Court-approved Sale that closed on October 16, 2018, BKST owns the Purchased Marks.

62. As shown in Exhibit 4 hereto, records of the U.S. Patent & Trademark Office confirm that U.S. Reg. No. 3,582,970 for BROOKSTONE covering "Bath linen; Bath towels;

Bed blankets; Bed linen; Bed sheets; Blanket throws; Cotton base mixed fabrics; Cotton fabric; Pillow cases; Pillow covers; Pillowcases; Towels; Towels; Unfitted furniture covers not of paper; Wash cloths; [and] Washcloths" is incontestable under 15 U.S.C. § 1065.

63. Upon information and belief, AQ Textiles has continued to manufacture and sell Licensed Products since the Petition Date, including following AQ Textiles' receipt of notice that the Debtors are rejecting the License Agreement, notice of the Amendment, and notice of breaches that prohibit AQ Textiles from shipping Licensed Products until those breaches are cured. *See* Objection ¶ 9; Exh. 3 (Nov. 30 Letter); Exh. 4 (Dec. 12 Letter).

64. AQ Textiles' assertion that that it is entitled to elect, and has elected, to retain its rights under the License Agreement pursuant to section 365(n) of the Bankruptcy Code, indicates that AQ Textiles has no intention to cease manufacturing and selling Licensed Products.

65. Under 15 U.S.C. § 1114(1), the use in commerce of a colorable imitation of a registered trademark like Purchased Marks in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake or to deceive is prohibited. Likewise, the statute prohibits the use of colorable imitations of a registered mark applied to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce in connection with the sale of goods on or in connection with which such use is likely to cause confusion, or to cause mistake or to deceive.

66. By continuing to manufacture, sell, and distribute Licensed Products bearing the Purchased Marks following the Debtors' cancellation of either all or a substantial portion of whatever rights AQ Textiles had or may have had under the License Agreement, AQ Textiles has

engaged in conduct that is likely to cause confusion among consumers and the trade, and thereby engaged in willful trademark infringement in violation of 15 U.S.C. § 1114(1) that has caused damage to BKST and the Purchased Marks.

**COUNT VI**
(Federal Unfair Competition)

67. BKST repeats and realleges all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

68. Pursuant to the Court-approved Sale that closed on October 16, 2018, BKST owns the Purchased Marks.

69. Upon information and belief, AQ Textiles has continued to manufacture and sell Licensed Products since the Petition Date, including following AQ Textiles' receipt of notice that the Debtors are rejecting the License Agreement, notice of the Amendment, and notice of breaches that prohibit AQ Textiles from shipping Licensed Products until those breaches are cured. *See* Objection ¶ 9; Exh. 3 (Nov. 30 Letter); Exh. 4 (Dec. 12 Letter).

70. AQ Textiles' assertion that that it is entitled to elect, and has elected, to retain its rights under the License Agreement pursuant to section 365(n) of the Bankruptcy Code, indicates that AQ Textiles has no intention to cease manufacturing and selling Licensed Products.

71. Under 15 U.S.C. § 1125(a)(1), a person who uses a false designation of origin which is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person" in connection with goods or services, is liable for damages caused by such conduct. 11 U.S.C. § 1125(a)(1).

72. By continuing to manufacture, sell, and distribute Licensed Products bearing the Purchased Marks following the Debtors' cancellation of either all or a substantial portion of whatever rights AQ Textiles had or may have had under the License Agreement, AQ Textiles has engaged in conduct that is likely to cause confusion among consumers and the trade, and thereby engaged in violation of 15 U.S.C. § 1125(a)(1) that has caused damage to BKST and the Purchased Marks.

**RELIEF REQUESTED**

WHEREFORE, BKST respectfully requests that the Court enter a judgment:

1. Declaring that AQ Textiles has no right under section 365(n) of the Bankruptcy Code or otherwise to retain its rights under the License Agreement following rejection of the License Agreement;

2. Declaring that AQ Textiles' purported interest in the Purchased Marks is not a Permitted Encumbrance, as that term is defined in the Sale Order and APA;

3. Declaring that, due to AQ Textiles' breaches of the License Agreement, AQ Textiles has limited or no remaining rights under the License Agreement;

4. Preliminarily and then permanently enjoining and restraining AQ Textiles and its officers, agents, servants, employees, attorneys, successors or assigns, and all persons or entities acting in concert or participation with them or any of them, from the manufacture, distribution, offering for sale, sale, advertising and/or promotion of any product that uses or depicts the Purchased Marks in any way;

5. Directing AQ Textiles to recall from all retailers any goods that violate BKST's rights;

6. Directing AQ Textiles to deliver to BKST for destruction or other disposition, within thirty (30) days of entry of final judgment herein, any and all items in AQ Textiles' possession, custody, or control that bear any designation in violation of BKST's rights;

7. Directing AQ Textiles to file with the Court and serve on counsel for BKST, within thirty days after entry of any injunction issued by the Court in this action, a sworn written statement as provided in 15 U.S.C. § 1116(a).

8. Directing AQ Textiles to account to BKST for its profits arising from the conduct complained of herein, pursuant to 15 U.S.C. § 1117(a).

9. Awarding BKST its reasonable attorneys' fees, taxable costs and disbursements of this action, pursuant to 15 U.S.C. § 1117.

10. Awarding Plaintiff such other and further relief as the Court deems just and proper.

Dated: December 20, 2018

DORSEY & WHITNEY (DELAWARE) LLP

*<u>/s/ Alessandra Glorioso</u>*
Eric Lopez Schnabel (DE Bar No. 3672)
Alessandra Glorioso (DE Bar No. 5757)
300 Delaware Avenue, Suite 1010
Wilmington, Delaware 19801
Telephone: (302) 425-7171
Facsimile: (302) 425-7177
E-mail: schnabel.eric@dorsey.com
glorioso.alessandra@dorsey.com
-and-

DORSEY & WHITNEY LLP
Bruce R. Ewing (*pro hac vice pending*)
Eric Lopez Schnabel
51 West 52nd Street
New York, New York 10019
Telephone: (212) 415-9200
Facsimile: (212) 953-7201
E-mail: ewing.bruce@dorsey.com
schnabel.eric@dorsey.com

*Counsel to BKST Brand Holdings LLC*